GEORGE P. SMITH AND HENRY B. SMITH v. MILES AYRAULT.

*Partnership — Contribution — Amount of recovery—Joint wrong-doers—Judgment—Evidence—Dormant partner—Patent—Jurisdiction of State courts.*

1. The rule that no contribution can be claimed as between joint wrong-doers is inapplicable to partners, in the general form in which it is stated.

2. The claim of a partner to contribution, in respect of a partnership transaction, cannot be defeated on the ground of illegality, unless the partnership is itself an illegal one, or unless the act relied on as the basis of the claim is not only illegal, but was committed by the partner seeking contribution when he knew or ought to have known of its illegality.

3. The rule seems to be well settled that where the money sued for was paid pursuant to a judgment recovered by a third person against the plaintiff, such judgment is competent evidence against the defendant of the *fact* of the judgment and of the *amount* paid.

4. In a suit for contribution by members of a firm against a member who was joined with them as defendants in a suit for a wrong for which the firm was primarily liable, but who was not served with process, being out of the jurisdiction of the court, but who was notified of the pendency of the suit by the defendants who did appear and defend, and refused to join in such defense, although a member of the firm at the time the wrong was committed, the judgment recovered is conclusive evidence against said defendant, both as to damages and costs.

5. A *dormant* partner may be joined as a party in a suit by or against the firm at the option of the plaintiffs.

6. Where two copartners paid a judgment recovered in an action of tort for which the firm was primarily liable, the liability of a third member, against whom judgment is recovered in a suit for contribution, is measured by his interest in the firm business, and the profits resulting therefrom.

7. The question of an invention, and its alleged use, and what is covered by it, may be litigated in the State courts, so long as the question of the validity of the patent or its infringement is not in issue. *Nichols, Shepard & Co. v. Marsh,* 61 Mich. 509; *Manfg. Co. v. Iron-works,* 63 Id. 195; *Garver v. Bement,* 69 Id. 149.

Error to Bay. (Green, J.) Argued April 20, 1888. Decided October 12, 1888.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Hatch & Cooley,* for appellant, contended:

1. The record of the judgment was not evidence of the facts found;

citing How. Stat. §§ 7730, 7731; U. S. Rev. Stat. (2nd. ed.), § 737; 3 Rev. Stat. N. Y. p. 660, § 2.

2. A judgment against two or more joint debtors on a citation served on but one, though authorized by the statutes of the State, is not binding on the defendants who were not served within the State, and who did not appear in the action; citing Freem. Judg. § 574; *D'Arcy v. Ketchum*, 11 How. 165; *Phelps v. Brewer*, 9. Cush. 390; *Thompson v. Richards*, 14 Mich. 172, 184; *Dean v. Chapin*, 22 Id. 275; nor will mere knowledge of the pendency of the suit be sufficient to compromise the rights of the unserved defendant in another state; citing *Ewer v. Coffin*, 1 Cush. 24; *McEwan v. Zimmer*, 38 Mich. 765; *Smith v. Grady*, 68 Wis. 215.

3. As to the exclusive jurisdiction of United States courts in patent cases, see Rev. Stat. U. S. (2d ed.) § 629, p. 111; *Smith v. McClelland*, 11 Bush, 523; *Hovey v. Pencil Co.*, 57 N. Y. 119; *Dudley v. Mayhew*, 3 Id. 9.

4. There are but few cases in which a recovery can be had at law by way of contribution between partners, the remedy being usually in equity, where an accounting can be had; citing Wait's Act. & Def. 300; *McGunn v. Hanlin*, 29 Mich. 476; *Wheeler v. Arnold*, 30 Id. 304; *Fletcher v. Grover*, 11 N. H. 368.

5. As to right to maintain joint action in this case, see *Kelby v. Steel*, 5 Esp. 194; *Graham v. Robertson*, 2 T. R. (D. & E.) 282; *Brand v. Boulcott*, 3 Bos. & P. 235; *Birkley v. Presgrave*, 1 East., 220; *Parker v. Ellis*, 2 Sand. (N. Y.) 223; 1 Pars. Cont. (7th ed.) 35; *Gould v. Gould*, 8 Cow. 168, 6 Wend. 263; *Boggs v. Curtin*, 10 Serg. & R. 211.

*Holmes & Collins,* for plaintiffs, contended for the rules laid down in the opinion.

LONG, J. This is an action of *assumpsit,* brought in the circuit court for the county of Bay by the plaintiffs, to recover contribution from the defendant. The cause was tried by jury, and the plaintiffs recovered a verdict and judgment for the sum of $2,360.54. The defendant brings error.

The facts appearing from the record, and undisputed, are substantially that prior to June, 1876, Miles Ayrault, the defendant, and George P. Smith, Eugene H. Smith, Henry B. Smith, and Warren Ayrault, resided in the state

of New York. Miles Ayrault and Warren Ayrault are brothers. George, Eugene, and Henry B. Smith are brothers. George, Henry, and Eugene Smith were lumbermen, and prior to that time had no experience in the manufacture and sale of Wyckoff water and gas pipe. The defendant had had experience in that line of business.

On June 2, 1876, the parties above named executed a written agreement for the manufacture and sale of Wyckoff patent water and gas pipe; the firm name being Ayrault, Smith & Co. By the terms of this copartnership agreement Miles Ayrault was to have a half interest in the business, the Smiths were to have two-sixths, and Warren Ayrault was to have one-sixth. Under said articles the copartnership was to continue one year, and the firm at once commenced work under this agreement.

On September 28, 1877, a new written copartnership agreement was entered into for the purpose of carrying on business under the same name. The parties to this agreement were the defendant, Miles Ayrault, George P. Smith, Henry B. Smith, and Warren Ayrault. Under these articles Miles Ayrault was a half owner and had a half interest in the business. George P. Smith, Henry B. Smith, and Warren Ayrault each had a one-sixth interest in the property and business. The business of Ayrault, Smith & Co. was carried on under the last articles until January, 1880, when the firm was dissolved, and that spring its business was wound up and settled. In that settlement no mention was made by either of the parties to the claim of the Hobbies, hereinafter referred to, on account of infringement of the patent.

The plaintiffs in this case made proof on the trial that Ayrault, Smith & Co. had the right to manufacture this water and gas pipe at Bay City, and had a license to sell in the states of Ohio, Indiana, Illinois, Missouri, Iowa,

Minnesota, Wisconsin, and Michigan. This right was shown by successive assignments, which were put in evidence.

Isaac S. Hobbie and John A. Hobbie succeeded to the right of the patentee for the manufacture and sale under this patent in the states of Maine, New Hampshire, Vermont, Rhode Island, Massachusetts, Connecticut, New York, New Jersey, Pennsylvania, Delaware, Maryland, District of Columbia, Virginia, and West Virginia.

The firm of Ayrault, Smith & Co., after the signing of the second articles of copartnership, continued the manufacture of water and gas pipe. They also commenced to manufacture an article known as steam-pipe casing. This was a new article of commerce, the manufacture of which was commenced in the spring of 1878 or winter of 1877 and 1878. They manufactured some of this steam-pipe casing, and sold some of it within the territory reserved to the Hobbies under the Wyckoff patent. All the sales in the territory of the Hobbies was this steam-pipe casing, all manufactured at Bay City, and all sold by correspondence, except one lot.

On account of such sales, Isaac S. Hobbie and John A. Hobbie brought suit in the United States circuit court for the Northern district of New York against Henry B. Smith, George P. Smith, Eugene H. Smith, Miles Ayrault, and Warren Ayrault. Personal service was had upon Eugene H. Smith, and there was an appearance and answer in the case on behalf of the three Smiths. No service was had upon Miles Ayrault and Warren Ayrault, although Warren Ayrault was a resident of the same town with Isaac S. Hobbie, one of the plaintiffs. Isaac S. Hobbie is a brother-in-law, and John A. Hobbie is a nephew, of the defendant. This suit was contested, and resulted in a judgment against Henry B. Smith, George P. Smith,

and Eugene H. Smith, which judgment was paid by Henry B. Smith and George P. Smith.

The testimony shows that Eugene H. Smith had a one-third interest in the property and profits of the interest of Henry B. Smith and George P. Smith in the firm of Ayrault, Smith & Co. This was an arrangement by themselves.

Having paid this judgment, the plaintiffs brought suit in this cause, and recovered the sum of $2,360.54; being the one-half of the amount so paid by them on said judgment.

The contention of defendant's counsel is that the judgment in the United States circuit court for the Northern district of New York has no tendency to establish any liability of Miles Ayrault, defendant, to the plaintiffs in this case, for the reasons that it is incumbent upon the plaintiffs in this suit to show, by proofs outside of the record in that case, that defendant Ayrault is liable for the acts for which the Messrs. Hobbie recovered; that defendant Ayrault was not served with process, or summoned to appear as a defendant in the case, and did not appear therein; that he is not in any way bound by the judgment of that court, and his liability to the plaintiffs cannot be established by the judgment thereof.

Certified copies of the record of the proceedings had in the case in the United States circuit court for the Northern district of New York were offered by plaintiffs, and received in evidence, from which it appears that the process issued in that cause was served upon Eugene H. Smith alone; that George P. Smith and Henry B. Smith subsequently appeared in the cause; and all three of the Smiths defended the action. The two Ayraults were made parties defendant, but no service of process was had upon them, and they did not appear in the cause.

Upon that trial the circuit court of the United States found as follows :

"1. That the letters patent of the United States granted to Arcalous Wyckoff, dated November 22, 1864, numbered 45,201, for an improvement in pipes for gas, water, etc., on which this suit is brought, are good and valid in law.

"2. That from the 31st day of May, A. D. 1876, to the expiration of the said letters patent, on November 22, 1881, the plaintiffs in this cause were vested with the title of, in, and to the said letters patent, within and for the states of Maine, New Hampshire, Vermont, Rhode Island, Massachusetts, Connecticut, New York, New Jersey, Pennsylvania, Delaware, Maryland, District of Columbia, Virginia, and West Virginia, pursuant to a grant from said Arcalous Wyckoff, dated July 31, 1874, recorded in the patent-office, August 29, 1874,—the interest of Miles Ayrault under such grant having been assigned to the plaintiffs by a transfer thereof in writing dated May 31, 1876.

"3. That the defendants have infringed upon said letters patent, and upon the exclusive rights of the plaintiffs under the same, by selling within the above-specified territory, while the said letters patent for such territory were so as aforesaid held and owned by said plaintiffs, pipe manufactured in accordance with the specifications and claims of said letters patent, and embodying the invention thereby secured to said Wyckoff and to his said grantees, in violation of the provisions of said letters patent, and without the license of said plaintiffs.

"4. That plaintiffs' damages for such infringement were and are the sum of $3,825."

This sum was afterwards increased by $300 for damages, and the interest, $24.21, and costs, taxed at the sum of $225.64,—making a total of judgment against defendants, for damages and costs, of $4,374.85, which was paid in full by George P. and Henry B. Smith.

Plaintiffs in this cause also offered in evidence the several patents under which the Messrs. Hobbie claimed to recover in the suit in the United States court, and the various assignments thereof from Arcalous Wyckoff to the Hobbies. Plaintiffs also gave testimony in the present

case showing that sales were made by Ayrault, Smith &
Co., during the continuance of their partnership under
their second articles, of this patent-pipe-casing, within
the territory in which the Hobbies had the exclusive
right to sell under the Wyckoff patent

It also appears in the present case that after the com-
mencement of the suit in the United States circuit court
for the Northern district of New York against Eugene
H. Smith, George P. Smith, Henry B. Smith, Warren
Ayrault, and Miles Ayrault, by Isaac S. Hobbie and
John A. Hobbie, by service of process upon Eugene H.
Smith, and the appearance in the cause by George P.
Smith and Henry B. Smith, these plaintiffs requested
Miles Ayrault, defendant in this suit, to appear in the
suit in the circuit court of the United States for the
Northern district of New York, and to join with them
in making defense to the plaintiffs' action ; giving him
full notice of the claim made by the Hobbies in that
suit, and urging upon him the necessity of a defense.
The defendant utterly declined to appear in the cause, or
to assist in any way in its defense.

After the cause was at issue in the United States
court, it appears that the testimony of the defend-
ant Miles Ayrault was taken in that cause; and he testi-
fied to sales made of this steam-pipe casing by Ayrault,
Smith & Co. within the state of New York, and other
states covered by the Wyckoff patent, in which the Hob-
bies had the exclusive right to sell.   The testimony of
Miles Ayrault, taken in that case, was read in evidence by
plaintiffs' counsel in the present case.

Plaintiffs also gave evidence tending to show that they
had no knowledge that they were in any way infringing
the rights of the Hobbies in making sales of this steam-
pipe casing within the territory claimed by them; that
they consulted Mr. Leggett, a patent attorney, and was

advised by him that the Wyckoff patent, under which the Hobbies claimed, did not cover this steam-pipe casing; and that they were acting in good faith in its sale, and in entire ignorance of any claim, or pretense of a claim, on the part of the Hobbies, that their rights were being infringed by such sales; and that the whole affair of the firm of Ayrault, Smith & Co. were settled and closed up before they had any knowledge or intimation that any such claim was made or to be made.

The defendant, Miles Ayrault, however, claimed that this matter of the claim of the Hobbies was frequently discussed between him and the Smiths during the continuance of the partnership, and while these sales were going on, and that the plaintiffs had full knowledge of such claim during the time of such partnership; but this question was settled by the verdict of the jury in this case under the charge of the court, and we must take it as settled, so far as the present case is concerned, that neither the plaintiffs, nor any of the Smiths, had any knowledge of the claim made by the Hobbies that their rights were being infringed by the sale of this steam-pipe casing, and that the plaintiffs were acting in good faith in making sales.

It is a well-settled rule that ro contribution can be claimed as between joint wrong-doers. If a plaintiff, who has recovered judgment against two defendants for a joint trespass, levies the whole damage on one of them, that one has no claim for a moiety of the damage from the other; but this doctrine is certainly inapplicable to partners, in the general form in which it is enunciated.

It is true that if a partnership is itself illegal, no member of it can, in respect of any transaction tainted with the illegality which infects the firm, obtain relief against any other member; but there is no authority for saying

that, if one of the members of a firm sustain a loss owing to some illegal act not attributable to him but, nevertheless imputable to the firm, such loss must be borne entirely by him, and that he is not entitled to contribution in respect thereof from the other partners. The claim of a partner to contribution from his copartners, in respect of a partnership transaction, cannot be defeated on the ground of illegality, unless the partnership is itself an illegal partnership, or unless the act relied on as the basis of the claim is not only illegal, but has been committed by the partner seeking contribution when he knew or ought to have known of its illegality. In any of these cases, he can obtain no assistance against his copartners, and must abide the consequences of his own willful breach of the law. 1 Lindl. Partn. 377. This was the view taken by the trial court, and the jury were instructed that no recovery could be had by plaintiffs if they had knowledge that these sales were made in violation of the rights of the Hobbies, and that they were trespassers upon their territory.

The judgment obtained against these plaintiffs in the United States court is evidence of the facts upon which it was founded. The firm of Ayrault, Smith & Co. was primarily liable for the wrong upon which the action was brought; and Miles Ayrault, being a member of that firm at the time the wrong was committed, was made a party defendant in that action, though no process was served upon him, he being out of the jurisdiction of that court. Notice was given him of the pendency of the suit by the defendants who did appear. He refused to appear or defend. Judgment was obtained, and plaintiffs paid it. This judgment must be held as conclusive evidence against the defendant.

The plaintiffs were permitted to show that these sales

were made in violation of the rights of the Hobbies, by introducing in evidence the patents and assignment under which the Hobbies claimed, as well as of sales by the firm of Ayrault, Smith & Co., made within their territory, and the payment of the judgment by them, as well as the partnership agreement between them and the defendant, together with testimony showing that plaintiffs were innocent of any intended wrong in making these sales. This testimony was competent, as explaining the relation of the parties to the cause of action in the judgment, and for the purpose of showing that defendant was liable for this contribution.

The rule seems to be settled that where money sued for is paid pursuant to a judgment recovered by a third person against the plaintiff, the judgment is competent evidence against the defendant to prove the fact of the judgment and the sum paid. If the action was defended by the plaintiff, the judgment is evidence of the facts on which it was founded in the following cases, viz.: If defendant was joined with the plaintiff as a co-party in the action, or had agreed to abide the result, or covenanted against the consequences, of such an action, or was primarily liable as the one for whose debt or actual default the action was brought, and had notice from defendant of its pendency, and reasonable opportunity to assume the defense if he desired. In these cases the judgment recovered is conclusive evidence against the present defendant, both as to damages and costs. Abb. Tr. Ev. 261; *Mayor, etc., v. Railroad Co.*, 49 N. Y. 657; *Smith v. Compton*, 3 Barn. & Adol. 408, approved in *Ins. Co. v. Wilson*, 34 N. Y. 275.

In *Welch v. McKane*, 10 Atl. Rep. 168, it was held that under the Connecticut act of May 9, 1883, providing that upon conviction of a person holding a liquor license for the violation of certain of its provisions, and no appeal

therefrom, his bond shall become forfeited, the record of such conviction is sufficient proof of the breach of the bond in a civil action upon it.

In *Davis v. Smith*, 10 Atl. Rep. 55, the supreme court of Maine laid down the rule that when a person is responsible over to another, either by operation of law or by express contract, and notice has been given him of the pendency of the suit, and he has been requested to take upon himself the defense of it, he is no longer regarded as a stranger to the judgment that may be recovered, because he has the right to appear and defend the action equally as if he were a party to the record. When notice is thus given, the judgment, if attained without fraud or collusion, will be conclusive against him, whether he has appeared or not. Citing *Veazie v. Railroad Co.*, 49 Me. 124; *Hardy v. Nelson*, 27 Id. 530; *City of Boston v. Worthington*, 10 Gray, 498; *Littlejohn v. Richardson*, 34 N. H. 187. The notice to appear and defend was sufficient. *Carpenter v. Pier*, 30 Vt. 81; *City of Boston v. Worthington*, 10 Gray, 496.

In the present case the judgment grew out of the wrongful sales of this steam-pipe casing, made by the firm of Ayrault, Smith & Co., in the territory of the Hobbies. Defendant Miles Ayrault had notice of this suit, and the claim being made therein, and the judgment must be held conclusive against him, and the action for contribution maintained, unless some other objections arise than those already noted.

The undisputed evidence in the case shows that the judgment rendered by the United States court was against Henry B. Smith, George P. Smith, and Eugene H. Smith, and that this judgment was paid by all of them jointly. It is therefore contended by defendant's counsel that, if there is any obligation for contribution on the part of defendant, Miles Ayrault, that obligation is owing by him

to all three, namely, Henry B., George P., and Eugene H. Smith, and no action for contribution can be maintained against the defendant, Ayrault, by either two of the three; that if the defendant is liable to make contribution therefor, the liability arises upon a contract, express or implied, to which contract the said three Smiths would be parties on one side, and the defendant, Ayrault, party on the other; that to enforce the liability of the defendant upon such contract the action would have to be brought in the name of the three Smiths, or by some assignee of one or more of them; that the plaintiffs cannot recover upon the ground that they are assignees of Eugene H. Smith, no such ground being alleged in the declaration, and no such proof being given on the trial of the cause.    The declaration alleges that—

"George P. Smith and Henry B. Smith, for themselves and for the use and benefit of Eugene H. Smith, plaintiffs herein,    *    *    *    complain of Miles Ayrault, defendant," etc.

The declaration then sets out the two partnership agreements, the business carried on thereunder, and the close of the partnership in 1880, and the settlement of all the business of the firm of Ayrault, Smith & Co. in that year. The declaration alleges an agreement between Miles Ayrault and the Hobbies, by which Miles Ayrault rendered valuable service to the Hobbies in the circuit court of the United States against the plaintiffs, and in consideration of which the Hobbies were not in any manner to enforce collection against Miles Ayrault.

The declaration further alleges that in the first articles of copartnership Eugene H. Smith was named as a member of the firm of Ayrault, Smith & Co.; that in the second articles he was not named as a partner; but the plaintiffs aver that, as between themselves and Eugene H. Smith, who were all brothers, they were equal partners in

all matters connected with the firm of Ayrault, Smith & Co., and that said moneys, when paid in defending said suit, and to satisfy the judgment thereon, were paid by George P. Smith and Henry B. Smith, plaintiffs herein, for the use and benefit, and on account, of themselves and Eugene H. Smith, and that by reason of the payment so made the said Miles Ayrault became indebted to the plaintiffs for the use and benefit of themselves and Eugene H. Smith for one-half of the amount paid by plaintiffs to satisfy said judgment, and on account of attorney's fees and expenses in the conduct of said suit.

Proofs were given, on the trial, of the fact of the existence of the partnership between the three Smiths, and also as to the relations of the three Smiths to the firm of Ayrault, Smith & Co.; and it satisfactorily appears that the three Smiths, as between themselves, were partners in all their business affairs, and in relation to the interests which George P. and Henry B. Smith had in the firm of Ayrault, Smith & Co., though Eugene H. Smith was not a partner as to the two Ayraults in the firm of Ayrault, Smith & Co. Eugene H. Smith was not a party to the contract of September 28, 1877, under which the firm of Ayrault, Smith & Co., carried on the business and made the sales upon which the action was founded in the United States court. There was no privity or contract relation between him and the defendant as to such business. Whatever interest Eugene H. Smith had in the firm of Ayrault, Smith & Co. he had as a resulting interest in the profits of the business, which would be worked out only through the interest of George P. and Henry B. Smith, and as a result of a settlement between them.

Neither of the Ayraults understood that Eugene had any interest in the partnership. They were so advised by the contract, and the testimony shows they so under-

stood it outside of the contract.    It appears that Eugene had nothing to do with the business of Ayrault, Smith & Co., or with George P. and Henry B. Smith.    His name was not used nor was he held out as a partner in either concern, though in fact he was a partner with George P. and Henry B. Smith in all their transactions, including the sharing of profits and losses with the two Smiths in the firm of Ayrault, Smith & Co.    Under the contract and the facts proven Eugene was a dormant partner of George P. and Henry B. Smith to the Ayraults and to the world.    The suit in the United States circuit court for the Northern district of New York was brought against Henry B. Smith, George P. Smith, Eugene H. Smith, Miles Ayrault, and Warren Ayrault; and in the declaration in that case it is alleged that—

"The defendants were copartners in business in the manufacture and sale of water and gas pipe, doing business at Bay City, in the State of Michigan, under the firm name and style of Ayrault, Smith & Co."

The fact that he was a dormant partner with George P. and Henry B. Smith, sharing the profits and losses with them in their partnership relations with the firm of Ayrault, Smith & Co., was sufficient in law to charge Eugene in the action in the United States circuit court, and he was bound by the judgment of that court.    The judgment was paid by George P. and Henry B. Smith for themselves and for Eugene Smith; he, Eugene, still remaining a dormant partner in the firm of George P. and Henry B. Smith when the judgment was so paid, and when this present action was brought.    This judgment having been paid by the firm of George P. and Henry B. Smith, of which Eugene was a dormant partner, if Miles Ayrault was liable for contribution, the suit for such could be brought in the name of the two Smiths.

It is a general rule that in all suits at law all the partners must join. The rule, however, undergoes or may undergo an exception in cases of dormant partners; for it is at the option of the plaintiffs in such cases either to join the dormant partner in the suit, or to omit him (as, in the corresponding case of the partners being sued as defendants, it is at the option of the plaintiff to join the dormant partner or not), and the joinder or non-joinder will not constitute any objection to the maintenance of the suit in any manner whatever. Story, Partn. § 241; 1 Lindl. Partn. 276; 2 Bates, Partn. § 1052.

Eugene H. Smith consented to the bringing of this suit in the manner in which it was brought. He was produced as a witness on behalf of the plaintiffs, and testified in the case, and, under the circumstances of his connection with the parties to the record, he would be bound by the judgment. The words in the declaration, "for themselves and for the use and benefit of Eugene H. Smith," may be treated as surplusage. The action could properly have been brought under the circumstances in the name of the two Smiths who were recognized as members of the firm of Ayrault, Smith & Co. We think the suit was properly brought as to parties.

This judgment was paid in full out of the partnership funds of George P. and Henry B. Smith, of which partnership Eugene H. Smith was a dormant partner. It was a judgment which the firm of Ayrault, Smith & Co. should have paid. Miles Ayrault, as it appears by this record, was bound by that judgment as well as the three Smiths. He had full notice of the suit, and the claim made by the Hobbies therein; was requested to appear and join the three Smiths in its defense, and declined. His testimony was taken by the plaintiffs in that suit, and it appears from his own testimony that he had knowledge that the Hobbies were making claim that their rights

were being interfered with in the sales within the territory claimed exclusively by them. He was a member of the firm of Ayrault, Smith & Co., having a half interest in its business and its profits; and upon a settlement of the affairs of the firm, in the spring of 1880, presumably took one-half of the profits made on these very sales for which the action in the United States court was brought. If this judgment in the United States court had been obtained and paid, as shown here, by the Smiths, before the dissolution of the firm of Ayrault, Smith & Co., on such dissolution and final settlement of its affairs no doubt could arise but that the judgment would have been the loss of the firm, and charged up as such, and that loss met by the individual members of the firm in proportion to their respective interests in the partnership.

The judgment was for wrongful sales made by the firm, and the action was brought against the individuals as members of and composing the firm. The firm had the profits from the sales, if any were made; and each member of the firm had in the settlement of the affairs of the partnership a share of these profits according to the interest which he had therein. Miles Ayrault had a half interest in the business and profits, and it would be inequitable to say that he should not share losses in proportion as he took the profits, and we know of no rule of law that would limit the amount of recovery in this case to less than that proportion.

If the parties to the action stood in the position of joint wrong-doers, then no recovery could be had, upon the principle that one shall not be permitted to profit by his own wrong; but the plaintiffs are found not to have had knowledge of any wrong in the premises, and to have acted in good faith in making these sales. The claim made by defendant's counsel, that each partner would be liable for one-fifth of the judgment only, has no force.

Defendant's counsel contend, further, that the circuit court of Bay county had no jurisdiction; that the right of a patentee under a patent cannot be tried in a state court.

The trial court, in its instruction to the jury, said:

"Now, the question arises here whether the court and jury can pass upon the rights under the patent. The court has no jurisdiction to determine the validity of a patent. That must be done in the United States court. So far as the question was involved in the case of the Hobbies against the Smiths, the United States court in New York determined that it was a valid patent. That is not questioned here. This court does not decide anything about it. That is already decided by the competent court, and there is nothing shown here to invalidate the patent,—no attempt here to invalidate the patent; so that that question does not arise. I see nothing involved here in regard to the patent but what this court can pass upon. Assuming that the patent was valid, and that it covered the articles manufactured and sold in those states, then we can pass upon the rights of the parties growing out of this set of circumstances."

There can be no doubt that the United States courts have exclusive jurisdiction when the case involves the validity of a patent. But that question was not involved in this case. The validity of the patent, or of an infringement upon it, was not in question on the trial. It was conceded by defendant that the Hobbies had the exclusive right to sell in the territory mentioned, and defendant testified that he knew at the time the sales were being made in the Hobbies' territory that it was claimed they were infringing upon the rights of the Hobbies; but no question was raised as to the validity of the patent, and the defendant could not question the validity of these patents under the circumstances of this case. If he desired to question their validity, he had the opportunity to do so in the United States court. This he declined to do; and it is too late for him, when suit is brought for con-

tribution, to make that objection. This question, we think, was properly settled by the trial court.

It is settled in this State that the question of an invention, and the alleged use of a patent invention, and what is covered by the patent, so long as the question of the validity of the patent or an infringement of a patent right is not in issue, may be litigated by the State courts. *Manufacturing Co. v. Iron-works*, 63 Mich. 195 (20 N. W. Rep. 582).

We find no error in the record, and the judgment of the court below must be affirmed, with costs.

SHERWOOD, C. J., CHAMPLIN and MORSE, JJ., concurred. CAMPBELL, J., did not sit.